# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOLORES BEST, Executrix of the Estate of Willie Best, Deceased | ) ) ) |
| Plaintiff, | ) ) |
| v. | )    Civil Action No.  07-007 (PLF) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant United States of America by and through undersigned counsel, hereby moves for dismissal of all claims pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  Specifically, Plaintiff's Complaint is barred by the "discretionary function" exception to the Federal Tort Claims Act ("FTCA" or "the Act"), and is further barred by the "private analogue" requirement of the Act.

In the alternative, to the extent that the Court relies upon matters outside of the Plaintiff's Complaint, the United States requests that the Court enter summary judgment in favor of Defendant.

In support of this Motion, the Court is referred to the accompanying Memorandum of Points and Authorities, the Statement of Material Facts Not in Genuine Dispute, and the proposed Order attached hereto.

Respectfully submitted,


  /s/ Jeffrey A. Taylor

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras

RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez

DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOLORES BEST, Executrix of the Estate of Willie Best | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-007 (PLF) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff filed a civil action on January 4, 2007, alleging the common law tort of negligence under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA" or "the Act"). Complaint at ¶ 1. Specifically, Plaintiff alleges that the United States, through the United States Attorney's Office ("USAO"), was negligent in the protection of Willie Best when it relocated him from one public housing complex in Northwest, D.C., to another public housing complex in Southeast, D.C. As a result, Plaintiff alleges that Willie Best was shot and killed. Plaintiff requests Ten Million Dollars ($10,000,000), plus interests and costs, in damages.

From the Complaint, it is hard to discover what is the claimed duty and violation alleged by Plaintiff. It appears that Plaintiff alleges that the USAO had an unspecified duty to provide protection to the Best family, and that the USAO violated that duty when it helped the family move out from the public housing facility at Lincoln Heights in Northeast, D.C., where the armed robbery occurred, to the public housing facility in Barry Farms in Southeast, D.C., which is across town from Lincoln Heights. To support the claim, Plaintiff's complaint contains

numerous conclusory allegations regarding the alleged duties imposed upon the USAO with respect to the protection of victims and witnesses to crimes in the District of Columbia. However, conclusory allegations, even those couched as factual assertions, do not satisfy a party's burden of making "factual" allegations sufficient to overcome a dispositive motion, nor can a party rely upon factual allegations which are blatantly contradicted by the record. In the present matter, neither the Plaintiff nor the decedent were placed in the Witness Protection Program, nor were they promised specific protection by the United States. Rather, the provision of witness assistance services to Plaintiff and the decedent were well-within the discretion of the United States Attorney's Office, and the Complaint is barred by the "discretionary function" exception to the FTCA. Further, because the function of the USAO and the services provided to Plaintiff and the decedent are so "uniquely governmental functions" that there is no private comparison, the Complaint is also barred by the "private analogue" requirement of the FTCA. Accordingly, the Court lacks subject matter jurisdiction and Plaintiff's Complaint fails to state a claim for which relief may be granted.

## STATEMENT OF FACTS

On or about September 14, 2004, Willie Best along with his mother, Delores Best, were victims of an armed robbery at their residence in the Lincoln Heights public housing dwelling located in the Northeast section of the District of Columbia. Complaint at ¶ 39-40. The robbery was carried out by two individuals, Duane Blunt and Diego Pryor, who were later arrested and charged with armed robbery and first degree burglary while armed. Complaint at ¶¶ 39-41.

At no time was the Best family placed in the Witness Protection Program, pursuant to the Witness Protection Act, 18 U.S.C. §3521, et seq., nor were they ever offered protection under

any program.  Declaration of Heather Cartwright ("Cartwright Decl.") at ¶ 19; Plaintiff Exhibit A

(attached to Complaint).[1/]  Rather, the family was moved pursuant to the Emergency Witness

Assistance Program ("EWAP Program"), which helps locate comparable housing, pays for the

family's moving expenses, and assists with temporary placement until a more permanent place

can be found.  Cartwright Decl. at ¶¶ 8-10.  The family was moved from D.C. public housing at

Lincoln Heights in N.E. and placed in termporary housing until the District of Columbia Housing

Authority ("the Housing Authority") could find alternative housing elsewhere.  Complaint at ¶

48-49.  Eventually, the Housing Authority was able to locate available and comparable public

housing at Barry Farms in S.E.  Complaint at ¶ 51.  The family could have rejected the housing

located at Barry Farms and asked the Housing Authority to look for other housing.  See

Attachment 7.  Nevertheless, the Best family accepted the location.  Id.  At the time of the move,

each family member signed an Acknowledgment Form stating that they understood that the

EWAP was not a protection program, and that the terms and conditions were fully explained to

them, including what services were available.  Attachment 6.  The family was moved into the

new housing on November 12, 2004.  Cartwright Decl. at ¶ 18.  However, in the lease agreement,

Willie Best was omitted as a member of the family who was living in the apartment.  Attachment

8.

On November 29, 2004, the two suspects pled guilty to the armed robbery.  They are still

---

[1/]      In the Complaint, Plaintiff characterizes the computer-generated letters from the USAO as an "offer" of protection.  Plaintiff's characterization is contradicted by the letters themselves which clearly demonstrate that no such offer was made.  See Scott v. Harris, __ U.S. __, 127 S.Ct. 1769, 1776 (2007) (when a party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," a court "should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the [record]").

incarcerated.  Almost two months later, on January 8, 2005, Willie Best was found shot to death in the hallway outside of his family's residence.  Complaint at ¶ 53.

**ARGUMENT**

## I.     STANDARD OF REVIEW

The standard to be applied in deciding a motion to dismiss is well-established.  For purposes of deciding whether a plaintiff has failed to state a cause of action, the factual allegations of the complaint must be taken as true, and all ambiguities or doubts in the factual allegations must be resolved in favor of the pleader.  Caudle v. Thomason, 942 F. Supp. 635, 638 (D.D.C. 1996).  Despite this generous standard, the complaint still must set forth sufficient factual information to suggest that there exists some recognized legal theory upon which relief can be granted.  See Bell Atlantic Corp. v. Twombly,  No. 05-1126  at 11,  __U.S. __ (May 21, 2007) ("once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").  A court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts.

### A.     Motion to Dismiss Under Federal Civil Rule 12(b)(6).

In making determinations on a motion to dismiss under Rule 12(b)(6), a court must view facts alleged in the complaint in the light most favorable to the plaintiff.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (*opinion limited by* Twombly,  No. 05-1126 at 11,  __U.S. at __, 2007 WL 1461066); Nix v. Hoke, 139 F. Supp. 2d 125, 131 (D.D.C. 2001), *citing,* Weyrich v. The New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001); see also Slaby v. Fairbridge, 3 F. Supp. 2d 22, 27 (D.D.C. 1998).  However, while it is necessary for the court to construe the complaint in

4

the plaintiff's favor, the court "need not accept inferences drawn by the plaintiff[ ] if such inferences are not supported by the facts set out in the complaint." Kowal v. MCI Communications, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Furthermore, the Court is not required to accept plaintiff's legal conclusions, even when couched as factual assertions. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (in determining a motion to dismiss, a court need not accept as true conclusory allegations couched as a factual allegation). See also Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997) ("Courts accept plaintiffs' allegations of fact, not their conclusions of law"); Major v. Plumbers Local Union No. 5, 370 F. Supp.2d 118, 123 (D.D.C. 2005) ("Conclusory legal and factual allegations, however, need not be considered by the court"). "Although the court must accept the plaintiff's version of the facts as true, the court need not accept the 'plaintiff's *characterization* of the facts." Fisher Bros. Sales Inc. v. United States, 46 F.3d 279, 286 (3rd Cir. 1995)) (emphasis in original). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, No. 05-1126 at 8, __U.S. at __, 2007 WL 1461066 (*quoting* Papasan, 478 U.S. at 286). In this case, ignoring the Plaintiff's conclusory allegations, Plaintiff fails to establish a right to relief on the substantive claims asserted.[2/]

### B. Motion to Dismiss Under Federal Civil Rule 12(b)(1).

Requests for dismissal for lack of jurisdiction over the subject matter pursuant to 12(b)(1) require a similar standard of review as those for failure to state a claim. However, a plaintiff

---

[2/]   Defendant, of course, does not concede that the factual allegations in the Complaint are true and, in fact, would dispute many of them if this matter could survive.

bears the burden of establishing subject matter jurisdiction.  See Miller v. United States, 710 F.2d 656, 662 (10th Cir.), cert. denied, 464 U.S. 939 (1983); Barid v. United States, 653 F. 2d 437, 440 (10th Cir. 1981), cert. denied, 454 U.S. 1144 (1982).  A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the Complaint.  Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the Complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.[3/]  Applying these standards, Plaintiff's Complaint should be dismissed in its entirety.

### C.    Summary Judgment Standards Under Federal Civil Rule 56.

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  The mere existence of a factual dispute, however, will not defeat summary judgment.  The non-moving party must

---

[3/]    It is well-established that when a defendant challenges the substance of jurisdictional allegations, it may use extraneous evidence to test those allegations without converting the motion into one for summary judgment.  See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Herbert v. National Academy of Sciences, 974 F. 2d 192, 197-98 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Bonterra America, Inc. v. Bestmann, 907 F.Supp. 4, 5 n.1 (D.D.C. 1995); Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116, 1120 (D.D.C. 1995); see also 11 Moore's Federal Practice, § 56.30[6] (Matthew Bender 3d ed.).

show that the dispute is genuine and material to the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 247-48; <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'"  <u>Celotex Corp.</u>, 477 U.S. at 323 (citations omitted).

Federal Civil Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to advance "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Further, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts,"  <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).  Likewise, an affidavit that merely recites conclusory allegations will not defeat summary judgment.  <u>See</u> <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Nor does the Court have to accept any allegations of a party which is contradicted by the

factual record.  Scott v. Harris, __ U.S. __, 127 S.Ct. 1769, 1776 (2007).  "When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment."  Id.  Thus, if there is in existence a document or

policy that is contradictory to a plaintiff's description, the Court must ignore the plaintiff's

allegation and rely instead upon the actual document or policy.  Indeed, a court must not allow a

litigant to circumvent the limits of the court's jurisdiction within the FTCA "by the simple

expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the

United States remains immunized."  Art Metal-USA, Inc. v. United States, 753 F.2d 1151, 1160

n. 16 (D.C. Cir. 1985)).


II.    **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PLAINTIFF'S TORT CLAIM UNDER THE DISCRETIONARY FUNCTION EXCEPTION OF THE FEDERAL TORT CLAIMS ACT.**

The United States, as a sovereign, is immune to all suits, except in accordance with the

explicit terms of the statutory waiver of such immunity.  Hercules v. United States, 516 U.S. 417,

422-423 (1996); Cox v. Secretary of Labor, 739 F. Supp 28, 30 (D.D.C. 1990); see also, United

States v. Testan, 424 U.S. 392, 399 (1976); United States v. Mitchell, 445 U.S. 535, 538 (1980);

Kline v. Republic of El Salvador, 603 F. Supp. 1313, 1316 (D.D.C. 1985); Pullen v. United

States, No. 96cv1211 (RCL), 1997 WL 350003, *2 (D.D.C. June 11 1997).  Because a waiver of

sovereign immunity must be strictly construed in favor of the sovereign, a waiver of sovereign

immunity "is to be read no more broadly than its terms require."  Masonry Masters, Inc. v.

Nelson, 105 F.3d 708, 712 (D.C. Cir. 1997).  Additionally, "any ambiguities in the statutory text

must be resolved in favor of immunity."  United States v. Williams, 514 U.S. 527, 531 (1995).

8

For example, to sustain a claim for monetary damages against the United States, the waiver of sovereign immunity "must extend unambiguously to such monetary claims." Flatow v. Islamic Republic of Iran, 74 F.Supp.2d 18, 20-21 (D.D.C. 1999). (*quoting* United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992)); see also, Bienvenuti v. Dep't of Defense, 587 F.Supp. 348, 351-52 (1984). In short, sovereign immunity operates as a jurisdictional bar to suit without an otherwise explicit waiver of such immunity by the United States. See, Flatow, 74 F.Supp.2d at 21.

The Federal Tort Claims Act operates as a limited waiver of sovereign immunity allowing, at least for certain claims and under specific circumstances, the United States to be sued for torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; see also, Eagle-Picher Industries, Inc. v. U.S., 937 F.2d 625, 627-28 (D.C. Cir. 1991). One exception to the limited waiver of sovereign immunity is the discretionary function exception. Under this exception, the United States cannot be held liable for:

> [a]ny claim. . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved was abused.

28 U.S.C. § 2680(a).

The "discretionary function" exception has two basic elements. First, the exception applies to acts that involve an element of judgment or choice. See Sloan v. U.S. Dept. of Housing and Urban Development, 236 F.3d 756, 759 (D.C. Cir. 2001) (*quoting* United States v. Gaubert, 499 U.S. 315, 322 (1991)). In other words, the conduct does not involve mandatory compliance with a particular federal statute, regulation or policy. Id. Second, assuming that an

9

element of judgment is involved, it then must be determined whether the judgment is of a kind that the discretionary function exception is designed to protect, namely a government action based upon considerations of public policy.  See, United States v. Varig Airlines, 467 U.S. 797, 813 (1984); Berkowitz v. U.S., 486 U.S. 531, 536 (1988); Sloan, 236 F.3d at 760.  When established government policy, as expressed or implied by statute, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy.  Gaubert, 499 U.S. at 323.  Such acts are encompassed by the discretionary function exception even, as noted above, where such discretion has been abused.  See, 28 U.S.C. § 2680(b).  The discretionary function exception operates to protect the Government from liability that would "seriously handicap efficient government operations."  Varig Airlines, 467 U.S. at 814 (quoting United States v. Muniz, 374 U.S. 150, 163 (1963)).  In short, where the Government may establish that the act involved a judgment based upon an action the exception is designed to protect, the discretionary function exception applies, and the district court lacks subject matter jurisdiction.  See 28 U.S.C. § 2680(a); Sloan v. U.S. Dept. of Housing and Urban Development, 236 F.3d 756, 759 (D.C. Cir. 2001).

The 11th Circuit Court of Appeals held that the discretionary function exception barred an FTCA claim very similar to Plaintiff's here.  In Ochran v. United States, the complainant alleged that the law enforcement officials were negligent when they failed to protect her after she informed the officials of threats made against her.  Ochran v. United States, 117 F.3d 495, 498 (11th Cir. 1997).  Ochran provided information to a narcotics task force regarding her boyfriend's activities in narcotics trafficking.  Id.  After his arrest, the boyfriend called Ochran and threatened to kill her and her family.  Id.  After the complainant informed the officials of the threat, no

efforts were made to revoke the boyfriend's bond or otherwise protect Ochran, other than to

inform the boyfriend and his attorney that such threats would not be tolerated, and to obtain the

boyfriend's assurances that it would not happen again.  Id. at 498-99.  One month later, the

boyfriend kidnaped Ochran at knifepoint from her home, drove her to a remote area, and choked

and stabbed her repeatedly.  Id. at 499.  After exhausting her administrative remedies, Ochran

filed a civil action pursuant to the FTCA alleging that the law enforcement officials negligently

failed to protect her.  Id.  The 11th Circuit Court held that the law enforcement official's decision

as to how to protect a victim and how to react against the threatening individual are well-within

the discretionary function exception and claims based upon those theories of liability are barred.

Id. at 501.[4/]  The Court went on to make the requisite finding that the law enforcement official's

decision as to how to protect a victim threatened by a suspected offender was indeed susceptible

to policy analysis, balancing "the victim's need for protection in light of the severity and

credibility of the threat, the allocation of limited government resources, and the government's

dealings with the suspected offender, such as a plea negotiation or cooperation of the suspected

offender with law enforcement agencies."  Id.   The court further deemed susceptible of policy

analysis the official's decisions whether to have (a) considered Ochran for the Witness Security

Program; (b) told the arraignment judge about the threat or asked that the boyfriend's bond be

revoked; and (c) sought a restraining order against the boyfriend.  Id. (citing Piechowicz v.

United States, 885 F.2d 1207, 1212-13 (4th Cir. 1989) (statutory provisions and Attorney General

---

[4/]        The Court did hold that the official's decision not to inform Ochran of the remedies
available against victim intimidation and harassment was not protected and remanded that issue
back to the district court.  Id. at 502.  That holding, however, is not at issue here, as there is no
allegation of a specific threat, and the Best family in the present matter was actually informed of
the services available to them.

guidance for considering a witness for the Witness Security Program afford Justice Department personnel wide discretion "freighted with policy overtones"); <u>Bergmann v. United States</u>, 689 F.2d 789, 793 (8th Cir. 1982) ("[d]etermining whether protection of the witness is advantageous to the federal interest rather obviously calls for a policy decision of the discretionary kind"); and <u>Smith v. United States</u>, 375 F.2d 243, 248 (5th Cir. 1967) ("prosecutorial discretion has long been recognized as sacrosanct")).

More recently, the United States District Court for the District of Columbia held that the discretionary function exception barred another FTCA claim alleging a failure to protect a witness.  In <u>Shuler v. United States</u>, the complainant alleged that his identification as a government informant stemmed from the government's negligence in protecting his identity and in protecting him from a criminal entourage.  <u>Shuler v. United States</u>, 448 F.Supp.2d 13, 16-17 (D.D.C. 2006).  Shuler was a confidential informant for the Federal Bureau of Investigation, the Drug Enforcement Agency, and the U.S. Attorney's Office for the District of Columbia and assisted law enforcement authorities in the apprehension of Kevin Gray, a convicted first degree murderer.  <u>Id.</u> at 16.  Shuler informed the FBI of Gray's whereabouts but warned the FBI not to apprehend Gray immediately because only Shuler had knowledge of Gray's location.  <u>Id.</u>  Shuler was concerned that if the FBI immediately arrested Gray, Gray would know that Shuler was a government informant.  <u>Id.</u>  Nevertheless, upon receiving Gray's location from Shuler, law enforcement officials arrested Gray.  <u>Id.</u>  Accordingly, the District Court assumed that these actions effectively disclosed to Gray that Shuler was a government informant.  <u>Id.</u>  Shuler then assisted the FBI in locating and apprehending Gray's lieutenants.  <u>Id.</u>  In turn, the government made assurances to Shuler that "they would protect him from these individuals."  <u>Id.</u>

12

Approximately two weeks after the authorities arrested Gray, Shuler was shot in the back resulting in permanent paralysis.  Id.  Shuler alleged that the shooter was acting on Gray's orders. Id.

Shuler argued that his involvement as an informant as well as the assurances given by the federal investigators "created a special relationship" between himself and federal law enforcement which made the authorities responsible for his safety and protection.  Shuler v. United States, 448 F.Supp. 2d 13, 16 (D.D.C. 2006).  In addition, Shuler argued that the authorities owed a duty of care to him to conceal his identity as an informant, to provide protection to him consistent with national standards of care, and to avoid placing him in inherent danger.  Id.  In resolving the case, the court held that because the defendant's conduct constituted discretionary functions under the Federal Tort Claims Act, it is entitled to sovereign immunity. Accordingly, the court granted the defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Id. at 17-18.   The court reasoned, in part, that the decision to protect a government informant constituted a discretionary function under the Federal Tort Claims Act.  Id. at 20.  Furthermore, the court intimated that "a generalized promise to provide protection to government witnesses is insufficient to constitute a waiver under the FTCA because it does not contain a specific promise involving no policy judgments."  Id. at 21 (quoting Ochran, 117 F.3d at 506 n.7).  In other words, absent any claim of an explicit promise to provide a specific type of protection, the Government's protective services constituted a discretionary function under the FTCA.  28 U.S.C. § 2680(a).

A.    **The Factual Allegations in Plaintiff's Complaint Fails to Demonstrate a Waiver of the United States' Sovereign Immunity Under the Discretionary Function Exception of the FTCA.**

Plaintiff's claims of negligence by the USAO fall within the types of actions contemplated by the discretionary function exception.  With respect to the first part of the test, both courts in Ochran and Shuler found that the decision to protect a government witnesses constitutes a discretionary action under the Federal Tort Claims Act.  Ochran, 117 F.3d at 501; Shuler, 448 F. Supp.2d at 20.  To the extent that Plaintiff is alleging negligence in the decision to provide protection to the Plaintiff, the statute governing the Witness Protection Program explicitly grants immunity to the United States and its employees for "any decision to provide or not provide protection under [the Witness Protection Program]."  18 U.S.C. § 3521(a)(3).  If, on the other hand, Plaintiff is alleging that the Defendant negligently protected Willie Best after placing him in a program, he can point to no statutes or regulations that impose a mandatory duty to provide a certain type of protection, nor was an explicit promise made to provide a specific type of protection to Plaintiff.  Indeed, the Court of Appeals in Ochran specifically found that none exist.  Ochran, 117 F.3d at 501.  Thus, the Defendant's action constitute a discretionary act that satisfies the first part of the discretionary function test.

Second, a decision as to when and how to provide protection to a witness is a government action based upon considerations of public policy that is  of the kind that the discretionary function exception is designed to protect.  Indeed, as is evidenced by the attached Declaration of Heather Cartwright, the entire process involves repeated steps in which the USAO exercies its discretion in "balancing the degree of threat the witness faces, the availability of government resources, the witness' own resources, and the requirements and restrictions of the various

14

witness security options."   Cartwright Decl. at ¶ 20.  "Each case is different and [the USAO]

work[s] with each witness to find options that will hopefully improve the witness' feeling of

safety over the long term."  Id.  Accordingly, the government's actions fall within the

discretionary function exception, and Plaintiff's Complaint should be dismissed for lack of

subject matter jurisdiction.

> **B.     The Record Demonstrates That the United States Has Not Waived its
> Sovereign Immunity Under the Discretionary Function Exception of the
> FTCA.**

In truth, the documentary record clearly demonstrates that Defendant not only abstained

from giving Mr. Best an explicit promise to provide a specific type of protection, but provided

Mr. Best a written notification indicating that no protection will be provided to Mr. Best and his

family.  See Acknowledgment Form (Attachment 6).  The Acknowledgment Form reads, in

pertinent part, "I understand that any assistance given to me through the Emergency Witness

Assistance Program does not constitute protection for me, my family, or anyone else."  Id.  Mr.

Best signed the Acknowledgment Form on September 16, 2004, and was witnessed by WSS

Forrest.  Thus, no special relationship existed between Mr. Best and the USAO sufficient to

overcome the discretionary function exception or to create a duty to protect Mr. Best.

Furthermore, for the purposes of this motion, although the Court must accept Plaintiff's

version of the facts as true, this Court is not bound to accept as true legal conclusions couched as

factual allegations.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Kowal v. MCI

Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Plaintiff contends that Mr. Best

was actually and properly participating in the short term witness protection program administered

by the Office of Enforcement Operations through the Office of the United States Attorney for the

15

District of Columbia.  Complaint at ¶ 23-24, 32, 53.  Contrary to Plaintiff's assertion, Mr. Best

was not in a short term witness protection program, but rather Mr. Best was provided monetary

assistance to move to another location in the city under the Emergency Witness Assistance

Program administered by the USAO.  See Cartwright Decl. at ¶ 14; Acknowledgment Form

(Attachment 6).  As part of Mr. Best's admission into the Emergency Witness Assistance

Program, Mr. Best was required to sign an Acknowledgment Form which provided that Mr. Best

would not be given protection in connection with his participation as a witness for the U.S.

Attorney's Office for the District of Columbia.  See Acknowledgment Form (Attachment 6).

Thus, Plaintiff never established a specific duty to protect Mr. Best and affirmatively disavowed

any undertaking to do so.

Plaintiff's further allegations that the AG Guidelines "left no element of choice for the

USAO victim witness advocate to deviate from" is directly contradicted by the documentary

evidence and cannot be accepted by the Court.  Notably, the AG Guidelines specifically provide

that "Department personnel should use their *discretion and sound judgment* when assessing and

discussing possible threats and security measures with victims."  Cartwright Decl. at ¶ 6.  All

other manuals and guidelines, likewise, leave the decisions to the discretion of the USAO.  Id. at

¶¶ 7-12.  Thus, Plaintiff's allegations are "blatantly contradicted by the record, so that no

reasonable jury could believe it," and this court "should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment."  Scott, __ U.S. at __, 127 S.Ct. at 1776.

Because the only facts that are supported by the record here demonstrate that the determination as

to the services to provide Plaintiff by the USAO here were rife with discretion, Plaintiff has

failed to overcome the discretionary function exception to the FTCA, and the Court should enter

judgment in favor of Defendant.

III.    **PLAINTIFF'S TORT CLAIM MUST BE DISMISSED DUE TO THE LACK OF PRIVATE ANALOGUE.**

Under the Federal Tort Claim Act the United States shall be liable, ". . . in the same manner and to the same extent as a private individual under like circumstances. . ." 28 U.S.C. §2674. This limitation upon the waiver of sovereign immunity only extends to the United States if a "*private person*", would be liable to a claimant. . ." 28 U.S.C. §1346(b)(1) (emphasis added). Even where the alleged liability is for the negligent performance of "uniquely governmental functions," the FTCA requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the government's liability. Rayonier, Inc. v. United States, 352 U.S. 315, 318-19 (1957); Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955).

The Supreme Court re-emphasized the FTCA requirement that a court must look solely to state law liability of private entities, and not public entities. United States v. Olson, 546 U.S. 43, 126 S.Ct. 510, 512 (2005). In Olson, two injured mine workers sued the United States under the FTCA alleging negligence by federal mine inspectors which resulted in a serious accident in an Arizona mine. Id. at 512. The Ninth Circuit Court overturned the district court's dismissal of the claim, holding that the United States could be held liable in the same manner as a state or municipal entity under the law where the activity occurred. Id. The Supreme Court reversed, interpreting the words of the FTCA "to mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort. Id. at 511 (emphasis added in original). In short, where there is no private analogue under state law that would support liability, there is no basis for waiver of sovereign

17

immunity under the FTCA.  <u>See</u> <u>e.g.</u> <u>Green Acres Enterprises, Inc. v. U.S.</u>, 418 F.3d 852 (8th Cir.

2005) (Because the Army Corps of Engineers alone has the authority to enforce the Clean Water

Act and to make permit decisions, there is no private analogue for trespass and nuisance claims

under Missouri Law for one who allegedly wrongfully determines that certain proposed

excavation projects are subject to the Clean Water Act).

In this case, no private analogue exists under local law.  Private businesses or associations

analogous to government agencies such as the United States Attorney's Office and the United

States Department of Justice simply do not exist.  The facts of the case support that there is no

analogous negligent situation in the private realm.  As a result, analysis of state and local law

imposing liability is impossible, since there is no private comparison.  Therefore, there is no

basis for waiver of sovereign immunity.

## CONCLUSION

Wherefore, for all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice, or, in the alternative, summary judgment should be entered in favor of Defendant.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| DOLORES BEST, Executrix of the Estate of Willie Best, Deceased | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-007 (PLF) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

---

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE ARE NO GENUINE DISPUTE**

1.      On or about September 14, 2004, Willie Best along with his mother, Delores Best, were victims of an armed robbery on their apartment in the Lincoln Heights public housing dwelling located in the Northeast quadrant of the District of Columbia.  Complaint at ¶ 39-40. The robbery was carried out by two individuals, Duane Blunt and Diego Pryor, who were later arrested and charged with armed robbery and first degree burglary while armed.  Complaint at ¶¶ 39-41.

2.      On September 15, 2004, Assistant United States Attorney ("AUSA")William Frenzen, who was assigned to the criminal robbery case, made contact with Laverne Forrest, a Witness Security Specialist ("WSS")in the Victim Witness Assistance Unit of the United States Attorney's Office.  Declaration of Heather L. Cartwright ("Cartwright Decl.") at ¶ 13.  AUSA Frenzen informed WSS Forrest that, although no actual threat was made to any of the members of the Best family, they did not feel safe in the complex because the robbery occurred inside their apartment.  Id.  AUSA Frenzen further informed WSS Forrest that the suspects in the robbery case were thought to have contacts in the following areas in the District of Columbia: Lincoln

Heights, Clay Terrace, and Trinidad, all in the NE quadrant of the District of Columbia.  Id.

3.      Members of the Best family, including Elizabeth Best and Willie Best, were interviewed on September 16, 2004 by WSS Forrest.  Cartwright Decl. at ¶ 14.  Ms. Forrest evaluated the Best family's eligibility for the range of witness security programs and specifically focused on the HUD relocation programs including either a public housing transfer or a section 8 voucher application.  Id.

4.      Decisions concerning the provision of assistance and reasonable protection from the accused for victims and witnesses are made within the discretion of the United States Attorney's Office, based upon a balancing of the degree of threat the witness faces, the availability of government resources, the witness' own resources, and the requirements and restrictions of the various witness security options.  Cartwright Decl. at ¶ 20.  Within that discretion, it was determined by the United States Attorney's Office that the Emergency Witness Assistance Program ("EWAP program") was a reasonable alternative to address the Best family's physical, mental, or emotional reservations about living in Lincoln Heights and participating in the prosecution of those arrested for the robbery.  Id. at ¶ 19.  Plaintiff was never placed in the Witness Protection Program.  Id.

5.      The Best family agreed to enter the EWAP program, and indicated their acceptance of the program and understanding of its limitations by signing the EWAP Acknowledgment form.  Cartwright Decl. at ¶ 14.  See also Attachment 6.  The Acknowledgment Form specifically states that the EWAP program does not constitute protection for the witness or anyone else.  Attachment 6.

6.      On September 29, 2004, Assistant United States Attorney William Frenzen sent a

letter to the District of Columbia Housing Authority requesting that Ms. Elizabeth Best be granted a public housing transfer based on her fears for her safety and the safety of her family. Cartwright Decl. at ¶ 15.  While awaiting the transfer in public housing, the Best family agreed to stay in temporary housing, and were provided hotel accommodations outside of the NE quadrant of the District of Columbia.  Id. at ¶ 14.

7.      On November 2, 2004, the District of Columbia Housing Authority informed Ms. Forrest that they had located an available public housing unit in the Barry Farms complex in the SE quadrant of the city.  Cartwright Decl. at ¶ 17.  Ms. Forrest informed Ms. Best about the apartment the same day and Ms. Best immediately went to look at the unit.  Id.

8.      Later that same day, Ms. Best informed Ms. Forrest that Ms. Best did not want the unit because of inadequate closet space, however, when Ms. Forrest later spoke with Ms. Best, Ms. Best decided to accept the unit although the unit was small.  Id.  Ms. Best signed an Acceptance Form, accepting the offer by the District of Columbia Public Housing Authority. Attachment 7.

9.      On November 12, 2004, Ms. Best moved into the apartment located in the Barry Farms Dwelling.  Cartwright Decl. at ¶ 18.  Willie Best was not listed as an occupant in the lease agreement for the unit.  Attachment 8.

10.     By October 6, 2004, both suspects had been arrested and were held pending trial in the robbery case.  Cartwright Decl. at ¶ 15.

11.     On November 29, 2004, the two suspects pled guilty to the armed robbery.  They are still incarcerated.

12. On January 8, 2005, Willie Best was found shot to death in the hallway outside of the unit at Barry Farms. Complaint at ¶ 53.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DOLORES BEST, Executrix of the Estate )
 of Willie Best, Deceased )
         )
   Plaintiff,      )
         )
   v.         )  Civil Action No.  07-007 (PLF)
         )
UNITED STATES OF AMERICA,  )
         )
   Defendant.     )
         )

## DECLARATION OF HEATHER L. CARTWRIGHT

1. My name is Heather L. Cartwright and I am an Assistant United States Attorney for the District of Columbia.  I am presently and have been since October of 2002, the Chief of the Victim Witness Assistance Unit (VWAU.)  In that capacity I supervise the witness security and other services available to victims and witnesses as well as monitor the provision of victims' rights to crime victims in cases prosecuted by the United States Attorney's Office for the District of Columbia.

2. Prior to October of 2004, Federal law stated that employees of the U.S. Department of Justice "shall make their *best efforts* to see that victims are accorded ... rights ... [including] the right to be *reasonably* protected from the accused offender." 42 U.S.C. section 10606 (a) and (b)(2) (emphasis added.)  On October 30, 2004, President Bush signed the Crime Victims Rights Act of 2004 which similarly states that employees of the Department of Justice "shall make their *best efforts* to see that crime victims are notified of, and accorded," rights including "[t]he right to be *reasonably* protected from the accused."  18 U.S.C. § 3771 (a)(1) and (c)(1) (emphasis added.)

3.      In describing the services that government officials are to provide, Federal law

states that "[a] responsible official shall arrange for a victim to receive *reasonable* protection

from a suspected offender and persons acting in concert with or at the behest of the suspected

offender." 42 U.S.C. § 10607 (c)(2) (emphasis added.)

4.      According to The Attorney General Guidelines for Victim and Witness Assistance

(the "AG Guidelines")[1], "the responsible official of the investigative agency shall arrange for a

victim to receive reasonable protection from a suspected offender and persons acting in concert

with or at the behest of the suspected offender." Attachment 1 (AG Guidelines (2000 ed.)) at

Art. IV.3.b. In District of Columbia Superior Court cases the "investigative agency" is usually

the District of Columbia Metropolitan Police Department which is not governed by the AG

Guidelines.

5.      That same section of the AG Guidelines provided in part that, "information on the

prohibition against intimidation and harassment and the remedies therefor should routinely be

made available to victims and witnesses." Id. A commentary to that section of the AG

Guidelines states that: "Of course, the Justice Department can not guarantee victims complete

freedom and safety from harassment and intimidation. There are, however, a wide range of

security measures that victims, witnesses, and law enforcement can take to lessen the risk of

harassment and intimidation. These measures may range from a victim changing his or her

telephone number to the extreme measure of enrollment in the Federal Witness Security Program

---

[1]      The AG Guidelines is the basic policy manual for the Justice Department on the
treatment of crime victims and witnesses. The version of the AG Guidelines in effect in 2004
were the AG Guidelines issued in January of 2000. In May of 2005, the Attorney General issued
new AG Guidelines which incorporated the provisions of the Crime Victims Rights Act of 2004.

(which is available to witnesses only in limited situations and has very stringent guidelines about

who qualifies for admission.) *Justice Department personnel should use their discretion and*

*sound judgment when assessing and discussing possible threats and security measures with*

*victims.*" Id. at Commentary (emphasis added.)

6.      The 2005 edition of the AG Guidelines contains almost identical language,

moving all comments out of the Commentary and into the substance of the Guideline.  The

provision states as follows:

> These AG Guidelines shall not be construed to require personal physical
> protection of a victim, such as by bodyguards.  Department personnel should use
> their discretion and sound judgment when assessing and discussing possible
> threats and security measures with victims.

Attachment 2 (AG Guidelines (2005 ed.)) at Art. IV.3.b, p.25.

7.      In June of 2005, the Executive Office for United States Attorneys issued a

Resource Manual for use in connection with the 2005 AG Guidelines.  Attachment 3 (Resource

Manual.)  The resource materials expanded on provisions of the AG Guidelines and contains

some limited guidance on witness security issues.[2]

8.      Concerning the right to be reasonably protected from the accused, the Resource

Manual states: "When appropriate, Department personnel should offer assistance with safety

planning, referral to local social service programs, careful consideration of Emergency Witness

Assistance Program (EWAP) services and potential referral of a threatened victim/witness to the

U.S. Marshals' Witness Security Program."   Attachment 3 at Art I.B.1, p.1.  Victim Witness

---

[2]      Due to witness security concerns, the Resource Manual cannot be produced in its
entirety, however, the cited portions of the Manual are attached as Attachment 3.  Should the
Court wish to see the remaining portions of the EWAP Plan, it will be provided to the Court for
an en camera inspection.

personnel are not responsible for assessing the threat level for a particular victim or witness, that

responsibility belongs to the investigative agency. Id. at Art. IVA.3(b), p.4. As far as the

EWAP program is concerned, "[e]ach individual USAO has its own protocol outlining

permissible uses of EWAP funds, and each USAO has its own allocation of EWAP funding.

How, when, and whether or not EWAP funds are used are entirely within the discretion of the

United States Attorney in the district." Id. at Art. IV.B.2.b, p. 3.

9.      According to the EWAP manual, "the Emergency Witness Assistance Program is

intended to be a program for use within the United States Attorney's office at the discretion of

the approving official." Attachment 4 (EWAP Manual) at Introduction. In addition, "[i]n order

for a district to access the EWAP, the district must have an EWAP plan on file with the

Executive Office for United States Attorneys (EOUSA) describing the levels of authority and the

internal procedures of the office." Attachment 4 at Chapter II. EWAP Plan.

10.     The EWAP Plan for the District of Columbia describes the procedures to be used

in the use of EWAP funds. Attachment 5.[3] The VWAU is responsible for administering the

EWAP under the direct supervision of the Executive Assistant United States Attorney for

Operations (or the United States Attorney's Designee) with general oversight by the United

States Attorney for the District of Columbia. The Plan includes a section on Determination of

Appropriate Options. That section outlines the general options available to assist victims and

witnesses. Included in the list are the Department of Housing and Urban Development (HUD)

---

[3]      Due to witness security concerns, the EWAP Plan cannot be produced in its
entirety, however, the cited portions of the Plan are attached as Attachment 5. Should the Court
wish to see the remaining portions of the EWAP Plan, it will be provided to the Court for an en
camera inspection.

4

Witness Relocation Assistance Program operated by the HUD Inspector General and the District

of Columbia Housing Authority. The program does not provide protective services, but only

makes it possible for eligible witnesses (and family members) to relocate to a different public

housing complex out of an area, or to be issued a Section 8 Voucher to pay for subsidized

housing in another area. Another option is the EWAP program which can be used for witnesses

who do not meet the criteria for other programs or who may need some interim assistance

currently not available from the Police Department or other law enforcement agencies while

awaiting entry into any of the other programs.

     11.    According to the EWAP Plan, the following steps are to be followed in assessing

risk and presenting assistance options to victims and witnesses. (1) Determination of the risk to

the witness should be made by the law enforcement investigator assigned to the case in

consultation with the Assistant US Attorney (AUSA) handling the matter and the Supervisory

Witness Security Specialist (SWSS) or the VWAU Chief. (2) The SWSS will assign the case to

a Witness Security Specialist (WSS) who will review the available options with the witness and

explain what each option entails, including its requirements and restrictions, and its application

and approval process. (3) The WSS assesses the eligibility of the witness for each program as

well as the suitability of each program to meet the needs of the witness, and may recommend an

appropriate option. If the witness refuses the recommended option, other options should then be

explored, including any actions that the witness may take on his or her own. The EWAP Plan

states that EWAP funds are extremely limited, and should be used only when other alternatives

are either unavailable or inappropriate. If a witness has been offered and declined the EWAP, he

or she must sign a written declination form indicating that he or she understands the options

given, the potential risk, and still declines to utilize these services.

12.     According to the EWAP Plan, a personal meeting is required among the WSS, the AUSA, and the witness. A Request Form will be filled out and forwarded to the SWSS or VWAU Chief for review. Requests exceeding certain amounts of money are reviewed at higher levels within the United States Attorney's Office.

13.     I have reviewed the file in the case of witness Anthony Wright Best and his family members. On September 15, 2004, Assistant United States Attorney William Frenzen, who was assigned to the criminal robbery case in which Mr. Best was a witness, made contact with the WSS assigned to the matter, Laverne Forrest. Mr. Frenzen sent an e-mail indicating that the defendants in the robbery case were thought to have contacts in the following areas in the District of Columbia: Lincoln Heights, Clay Terrace, and Trinidad, all in the NE quadrant of the District of Columbia. Although no actual threat was made to any of the members of the Best family, they did not feel safe in the apartment complex because the robbery occurred in their apartment.

14.     According to the file, Mr. Anthony Best was interviewed on September 16, 2004 by Witness Security Specialist (WSS) Laverne Forrest. The following family members of Mr. Best were also present : Elizabeth Best, Ronald Doy, and Willie Best. Ms. Forrest evaluated the Best family's eligibility for the range of witness security programs and specifically focused on the HUD relocation programs including either a public housing transfer or a section 8 voucher application. Either of those options would involve a waiting time before the family could move, so Ms. Forrest also discussed the possibility of emergency lodging pursuant to the EWAP program while the family waited for the HUD relocation programs to be finalized. The family accepted emergency lodging through the EWAP program, pending permanent placement, and

6

further indicated their acceptance of the EWAP program and their understanding of its limitations by signing the EWAP Acknowledgment form. Attachment 6. The Acknowledgment Form specifically states that the EWAP program does not constitute protection for the witness or anyone else. Id.

15.    On September 29, 2004, AUSA William Frenzen sent a letter to the District of Columbia Housing Authority requesting that Ms. Elizabeth Best be granted a public housing transfer based on her fears for her safety and the safety of her family. The letter indicated that one of the robbers in the robbery case had been immediately arrested but the other robber was still at large. In addition, the suspect being detained had influence in the northeast quadrant of the city. That letter was faxed to the District of Columbia Housing Authority the same day.

16.    On October 6, 2004, Ms. Best was notified that the second robbery suspect had been apprehended.

17.    On November 2, 2004, the District of Columbia Housing Authority informed Ms. Forrest that they had located an available public housing unit in the Barry Farms complex in the SE quadrant of the city. Ms. Forrest informed Ms. Best about the apartment the same day and Ms. Best immediately went to look at the unit. Later that same day, Ms. Best informed Ms. Forrest that Ms. Best was declining the unit because of inadequate closet space, however, when Ms. Forrest later spoke with Ms. Best, Ms. Best indicated that she had decided to accept the unit although the unit was very small. Attachment 7.

18.    On November 12, 2004, Ms. Best moved into the apartment located in the Barry Farms Dwelling. Attachment 8. In the lease agreement, Willie Best was omitted as a member of the family who was living in the apartment. Id.

7

19.    It does not appear from the file that Ms. Forrest ever discussed the Federal

Witness Security Program or the District of Columbia Short Term Relocation Program with the

Best family.  However, the Best family probably would not have qualified for admission into

either of these programs.  Those programs are operated by the United States Marshals Service

and are available for significant witnesses in significant prosecutions where there is a real threat

to the witness.  See USA Book Chapter 24, section 4 ("There must exist a real threat to the

witness; the criminal organization which the witness testified against must have the means and

desire to harm or kill the witness wherever the witness resides in the United States, including

prison".)  In addition, the agency must find that there is no other reasonable alternative to the use

of these programs.  In this case, the EWAP program existed as a reasonable alternative to address

the Best family's physical, mental, or emotional reservations about living in Lincoln Heights and

participating in the prosecution of those arrested for the robbery.  See Attachment 5 (EWAP

Plan.)

20.    Decisions concerning the provision of reasonable protection from the accused for

victims and witnesses are usually made by consultation among the AUSA, police officer, SWSS,

and WSS.  The decisions are made within the discretion of the United States Attorney's Office,

based upon a balancing of the degree of threat the witness faces, the availability of government

resources, the witness' own resources, and the requirements and restrictions of the various

witness security options.  Each case is different and we work with each witness to find options

that will hopefully improve the witness' feeling of safety over the long term.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 23, 2007.


HEATHER L. CARTWRIGHT
Chief, Victim Witness Assistance Unit
USAO/DC

9

U.S. Department of Justice
Office of the Attorney General



# Attorney General Guidelines for Victim and Witness Assistance

## 2000



**Attachment 1**

# ARTICLE IV.
# SERVICES TO VICTIMS AND WITNESSES

## A. Investigation Stage

The investigatory agency's responsibilities begin with the report of the crime and extend through the prosecution of the case. In some instances, where explicitly stated, the investigatory agency's responsibility for a certain task is transferred to the prosecution agency when charges are filed.

1. Designation of Responsible Officials. Application of Art. IV.A. will be the responsibility of the following officials:

   a. In the FBI, the responsible official is the Special Agent-in-Charge of the division having primary responsibility for conducting the investigation.

   b. In the DEA, the responsible official is the Special Agent-in-Charge of the office having primary responsibility for conducting the investigation.

   c. In the INS, the responsible official is the District Director or Chief Patrol Agent of the office having primary responsibility for conducting the investigation.

   d. In the U.S. Marshals Service, the responsible official is the U.S. Marshal in whose district the case is being conducted.

   e. In the Office of the Inspector General, the responsible official is the Inspector General.

2. Identification of Victims. At the earliest opportunity after the detection of a crime at which it may be done without interfering with an investigation, and continuing throughout the investigation and prosecution of the case, the responsible official of the investigative agency shall identify the victims of a crime. (42 U.S.C. § 10607(b)(1))

3. Description of Services

   a. Information, Notice, and Referral

      (1) Initial Information and Notice. At the earliest opportunity after detection of a crime at which it may be done without interfering with an investigation, the responsible official of the investigative agency shall inform a victim of

         (a) Their right to receive, on request, the services listed in 42 U.S.C. § 10607(c). (42 U.S.C. § 10607(b)(2)).

         (b) The name, title, business address, and telephone number of the responsible official to whom such a request for services should be addressed. (42 U.S.C. § 10607(b)(3))

(c) The place where the victim may receive emergency medical and/or social services. (42 U.S.C. § 10607(c)(1)(A))

(d) Restitution or other relief (including crime victim compensation programs) to which the victim may be entitled under this or any other applicable law and the manner in which such relief may be obtained. (42 U.S.C. § 10607(c)(1) (B))

(e) Public and private programs that are available to provide counseling, treatment, and other support to the victim. (42 U.S.C. § 10607(c)(1)(C))

(f) The right to make a statement about pretrial release in cases of interstate domestic violence, violation of a protection order, and stalking.

At the earliest opportunity after detection of an interstate domestic violence, violation of a protection order, or stalking offense at which it may be done with out interfering with an investigation, the responsible official of the investigative agency shall inform the victim that he or she has the right to make a statement regarding the danger posed by the defendant for the purposes of determining pretrial release of the defendant or conditions of such release. (*see* 18 U.S.C. § 2263)

(g) Information about payment for testing and counseling in cases of sexual assaults that pose a risk of transmission of sexually transmitted diseases.

At the earliest opportunity after detection of a sexual assault that poses a risk of transmission of sexually transmitted diseases at which it may be done without interfering with an investigation, the responsible official of the investigative agency shall inform victims of the Attorney General's obligation to provide for the payment of the cost of up to two anonymous and confidential tests of the victim for sexually transmitted diseases and the cost of a counseling session by a medically trained professional regarding the accuracy of such test(s) and the risk of transmission of sexually transmitted diseases to the victim as the result of the assault. (42 U.S.C. § 10607(c)(7))

*Commentary*

*To comply with the above informational requirements, it is recommended that as soon as victims are identified, they should receive a printed brochure or wallet-sized card that lists victims' rights and local service providers, briefly describes the rights and available services, and lists the names and telephone numbers of key officials and the victim-witness coordinator or specialist. Models for such brochures, in a variety of different languages, are available through the Office for Victims of Crime. Whenever possible, personal contact should be initiated with victims. Institution of this recommendation should be included in the annual Best Efforts Report.*

(2) Referral. The responsible official shall assist the victim in contacting the person or office responsible for providing the services and relief described in paragraph A.1. (42 U.S.C. § 10607(c)(1)(D)) When charges are filed, the responsibility for making referrals is transferred to the responsible official of the prosecutor's office.

(3) Notice during the investigation. During the investigation of a crime, a responsible official shall provide the victim the earliest possible notice concerning

(a) The status of investigation of the crime, to the extent that it is appropriate and will not interfere with the investigation. (42 U.S.C. § 10607(c)(3)(A))

(b) The arrest of a suspected offender. (42 U.S.C. § 10607(c)(3)(B))

b. Protection from Harassment/Intimidation. The responsible official of the investigative agency shall arrange for a victim to receive reasonable protection from a suspected offender and persons acting in concert with or at the behest of the suspected offender. (42 U.S.C. § 10607(c)(2))

Moreover, information on the prohibition against intimidation and harassment and the remedies therefor should routinely be made available to victims and witnesses. The responsible official should, if warranted, advise the component of the Justice Department having protection responsibilities for the victim of intimidation or harassment, of instances involving intimidation or harassment of any victim or witness.

*Commentary*

*Civil procedures for protecting victims and witnesses against such harm and intimidation, including application for temporary restraining orders and protective orders, are set out in 18 U.S.C. §§ 1512-1515. Of course, the Justice Department can not guarantee victims complete freedom and safety from harassment and intimidation. There are, however, a wide range of security measures that victims, witnesses, and law enforcement can take to lessen the risk of harassment and intimidation. These measures may range from a victim changing his or her telephone number to the extreme measure of enrollment in the Federal Witness Security Program (which is available to witnesses only in limited situations and has very stringent guidelines about who qualifies for admission). Justice Department personnel should use their discretion and sound judgment when assessing and discussing possible threats and security measures with victims.*

c. Return of Property Held as Evidence. At all times, a responsible official shall ensure that any property of a victim that is being held for evidentiary purposes be maintained in good condition and returned to the victim as soon as it is no longer needed for evidentiary purposes. (42 U.S.C.§ 10607(c)(6))

**U.S. Department of Justice**
Office of Justice Programs
*Office for Victims of Crime*

# ATTORNEY GENERAL GUIDELINES FOR VICTIM AND WITNESS ASSISTANCE



## May 2005

1

**ARTICLE IV.**
**SERVICES TO VICTIMS AND WITNESSES**

**A. Investigation Stage**

The investigative agency's responsibilities begin with the report of the crime and extend through the prosecution of the case. In some instances, when explicitly stated, the investigative agency's responsibility for a certain task is transferred to the prosecuting agency when charges are filed.

1. Designation of Responsible Officials. Application of article IV.A will be the responsibility of the following officials:

     a. In the FBI, the responsible official is the special agent-in-charge of the division having primary responsibility for conducting the investigation.

     b. In the DEA, the responsible official is the special agent-in-charge of the office having primary responsibility for conducting the investigation.

     c. In the Bureau of Alcohol, Tobacco, Firearms and Explosives, the responsible official is the special agent-in-charge of the office having primary responsibility for conducting the investigation.

     d. In the U.S. Marshals Service, the responsible official is the U.S. Marshal in whose district the case is being conducted.

     e. In the Office of the Inspector General, the responsible official is the Inspector General.

   Responsible officials may delegate their responsibilities under these *AG Guidelines* to subordinates in appropriate circumstances, but responsible officials remain obliged to ensure that all such delegated responsibilities are discharged.

2. Identification of Victims. At the earliest opportunity after the detection of a crime at which it may be done without interfering with an investigation, the responsible official of the investigative agency shall identify the victims of the crime. (42 U.S.C. § 10607(b)(1)) Prior to the filing of criminal charges, components participating in the Victim Notification System (VNS) shall enter the name and available contact information for known victims in that system, and nonparticipating components shall provide the responsible prosecuting official with a list containing the names of and available contact information for known victims. In cases with large numbers of victims, the list shall, if practicable, be provided in an electronic format capable of being readily entered into VNS.

22

3. Description of Services.

    a. Information, Notice, and Referral

        (1) Initial Information and Notice. Responsible officials must advise a victim pursuant to this section at the earliest opportunity after detection of a crime at which it may be done without interfering with an investigation. To comply with this requirement, it is recommended that victims be given a printed brochure or card that briefly describes their rights and the available services, identifies the local service providers, and lists the names and telephone numbers of the victim-witness coordinator or specialist and other key officials. Models for such brochures in several different languages are available from the Office for Victims of Crime. Personal contact should be made whenever reasonably feasible.[2] A victim must be informed of—

            (a) His or her rights as enumerated in 18 U.S.C. § 3771(a). (18 U.S.C. § 3771(c)(1))

            (b) His or her right entitlement, on request, to the services listed in 42 U.S.C. § 10607(c). (42 U.S.C. § 10607(b)(2)).

            (c) The name, title, business address, and telephone number of the responsible official to whom such a request for services should be addressed. (42 U.S.C. § 10607(b)(3))

            (d) The place where the victim may receive emergency medical or social services. (42 U.S.C. § 10607(c)(1)(A))

            (e) The availability of any restitution or other relief (including crime victim compensation programs) to which the victim may be entitled under this or any other applicable law and the manner in which such relief may be obtained. (42 U.S.C. § 10607(c)(1)(B))

            (f) Public and private programs that are available to provide counseling, treatment, and other support to the victim. (42 U.S.C. § 10607(c)(1)(C))

            (g) The right to make a statement about the pretrial release of the defendant in any case of interstate domestic violence, violation

---

[2] Contact by law enforcement agencies with foreign nationals residing in other countries must be coordinated with the appropriate officials of the host government through the FBI Legal Attaché Office responsible for the country in which the foreign national resides. In the immediate aftermath of a crime against a foreign national in the United States, the State Department will coordinate contact through the embassy or consulate for the country of which the victim is a citizen.

of a protection order, or stalking. At the earliest opportunity after detection of an interstate domestic violence or stalking offense or violation of a protective order at which it may be done without interfering with an investigation, the responsible official of the investigative agency shall inform the victim that he or she has the right to make a statement regarding the danger posed by the defendant for the purposes of determining pretrial release of the defendant or conditions of such release. (18 U.S.C. § 2263)

(h) The availability of payment for testing and counseling in cases of sexual assaults. The responsible official of the investigative agency shall inform victims of the Attorney General's obligation to provide for the payment of the cost of up to two anonymous and confidential tests of the victim for sexually transmitted diseases during the 12 months following the assault and the cost of a counseling session by a medically trained professional regarding the accuracy of such tests and the risk of transmission of sexually transmitted diseases to the victim as a result of the assault. (42 U.S.C. § 10607(c)(7))

The responsible official should advise the victim of a sexual assault that poses a "risk of transmission" of the Acquired Immunodeficiency Syndrome (AIDS) virus of the circumstances under which the court may order that a defendant be tested for this condition. The official should explain that such an order is only available after the defendant has been charged. (42 U.S.C. § 14011)

(i) The availability of services for victims of domestic violence, sexual assault, or stalking. Responsible officials should take appropriate steps to inform victims of domestic violence, sexual assault, or stalking. of assistance that may be available to them under programs that have received grants from the Attorney General, such as legal assistance services funded by grants under 42 U.S.C. § 3796gg-6, housing assistance for child victims of domestic violence, sexual assault, or stalking funded by grants under 42 U.S.C. § 13975, and other similar services. (*See also* art. VII (offering additional guidance for dealing with victims of domestic violence, sexual assault, or stalking))

(j) The option of being included in VNS. Victims shall be notified of their opportunity to receive notification of case developments through VNS as well as their right to decline to be included in the VNS database.

24

(k) Available protections from intimidation and harassment. Whenever appropriate, victims should be notified of legal protections and remedies (including protective orders) that are available to prevent intimidation and harassment.

(2) Referral. The responsible official designated in paragraph A.1 shall assist the victim in contacting the person or office responsible for providing the services and relief described in paragraph A.3. (42 U.S.C. § 10607(c)(1)(D)) When charges are filed, the responsibility for making referrals is transferred to the responsible official in the prosecutor's office.

(3) Notice during the investigation. During the investigation of a crime, a responsible official shall provide the victim with the earliest possible notice concerning—

(a) The status of the investigation of the crime, to the extent that it is appropriate and will not interfere with the investigation. (42 U.S.C. § 10607(c)(3)(A))

(b) The arrest of a suspected offender. (42 U.S.C. § 10607(c)(3)(B))

b. Protection From Harassment/Intimidation. The responsible official of the investigative agency shall arrange for a victim to receive reasonable protection from a suspected offender and persons acting in concert with or at the behest of the suspected offender. (42 U.S.C. § 10607(c)(2)) Such arrangements may vary from aiding a victim in changing his or her telephone number to the extreme measure of proposing the victim for inclusion in the Federal Witness Security Program (which is available to witnesses only in limited situations and pursuant to very stringent admission guidelines). These *AG Guidelines* shall not be construed to require personal physical protection of a victim, such as by bodyguards. Department personnel should use their discretion and sound judgment when assessing and discussing possible threats and security measures with victims.

c. Return of Property Held as Evidence. At all times, a responsible official shall ensure that any property of a victim that is being held for evidentiary purposes is maintained in good condition and returned to the victim as soon as it is no longer needed for evidentiary purposes. (42 U.S.C. § 10607(c)(6)) There may be circumstances, however, in which a victim's property will inevitably deteriorate or will be damaged through legitimate use in the law enforcement process. Responsible officials may consider advising victims of such circumstances when they arise. Contraband shall not be returned to victims.

d. Notification to Victims' and Witnesses' Employers and Creditors. Upon request by a victim or witness, the responsible official should assist in notifying—

25

**U.S. Department of Justice**
Executive Office for United States Attorneys

# ATTORNEY GENERAL'S GUIDELINES FOR VICTIM AND WITNESS ASSISTANCE



# RESOURCE MATERIALS

# June, 2005

**Attachment 3**

**AG Guidelines Resource Manual – Article I**
**Victims' Rights**

**I.B.  Rights of Crime Victims**

**1.  The right to be reasonably protected from the accused.**

When appropriate, Department personnel should offer assistance with safety planning, referral to local social service programs, careful consideration of Emergency Witness Assistance Program (EWAP) services and potential referral of a threatened victim/witness to the U.S. Marshal's Witness Security Program.  (*See* AG Guidelines Articles IV.B.2.a and Article IV.3.b)

**FOR INTERNAL DEPARTMENT OF JUSTICE USE ONLY.  NOT FOR EXTERNAL DISTRIBUTION.**

**IV.A.3(b)   Protection From Harassment/Intimidation**

Victim-witness personnel should not assume responsibility for assessing the level of danger to a victim posed by a particular defendant or criminal network affiliated with the defendant. Such assessments should be conducted only by law enforcement personnel with appropriate training and access to relevant intelligence information.

FOR INTERNAL DEPARTMENT OF JUSTICE USE ONLY.  NOT FOR EXTERNAL DISTRIBUTION.

USABook > Victims > **EWAP Manual**

# Emergency Witness Assistance Program Manual

Created by the
LECC/Victim-Witness
Staff
Office of Legal Counsel
Resource, Management,
and Planning Staff
Executive Office for
United States Attorneys

July 2004

Introduction
I.     Program Description
II.    EWAP Plan
III.   Program Limitations
IV.    Witnesses
V.     Services
VI.    Confidential Payment Log
VII.   Forms
VIII.  Procedures
IX.    Funding
X.     Reimbursements
XI.    Exceeding Program Limitations
XII.   Reporting Requirements
       Appendices

| | Search |

Search this Manual (help)

**Attachment 4**

USABook Online > Victims > EWAP Manual > **Introduction**

# Introduction

The Emergency Witness Assistance Program is intended to be a program for use within the United States Attorney's office at the discretion of the approving official. Using the Emergency Witness Assistance Program correctly can alleviate witnesses' fears and can assist in the prosecution of cases. Using the Emergency Witness Assistance Program in your district will require planning and attention to detail to ensure the proper administration of this highly effective prosecutorial tool. Any questions or comments concerning the program or this manual should be directed to the Executive Office for United States Attorneys' LECC/Victim-Witness Staff at (202) 616-6792.

USABook Online > Victims > EWAP Manual > **Chapter II**
prev | next | help

# II. EWAP Plan

In order for a district to access the EWAP, the district must have an EWAP plan on file with the Executive Office for United States Attorneys (EOUSA) describing the levels of authority and the internal procedures of the office. The district plan may be modified at any time, and Tab 4 provides a sample incorporating the prosecutorial, administrative, and victim-witness sections of the office. Finally, ensure that a copy of the modified plan is forwarded to the LECC/Victim-Witness Staff at EOUSA for the record.

# Memorandum

*United States Attorney*
*District of Columbia*



| Subject: | Date: |
|---|---|
| Emergency Witness Assistance Program (EWAP) Procedures for the U.S. Attorney's Office for the District of Columbia (USAO-DC) | April 2, 2007 |

To:

Katharine L. Manning
Assistant Director
Office of Legal Programs and Policy
LECC/Victim-Witness Staff

From:

Jeffrey A. Taylor
United States Attorney

Mary Patrice Brown
Executive Assistant United States Attorney
for Operations

Heather L. Cartwright
Chief, Victim Witness Assistance Unit

## Policies and Procedures for Use of Emergency Witness Assistance Program Funds

The purpose of the EWAP is to provide the U.S. Attorney's Office for the District of Columbia with the flexibility to address a critical need: assistance to witnesses on an emergency basis to ensure their well-being and to ensure that witnesses will be available for trial, other court proceedings, or activities related to an ongoing case. The program also addresses a witness' or prospective witness' physical, mental, or emotional reservations about participating in a specific matter before or after she or he has agreed to cooperate with or be available to testify for the government. EWAP is NOT designed to provide physical protection, name changes, or permanent relocation.

I.    Administration of EWAP

    A.    The Victim Witness Assistance Unit (VWAU) will administer the EWAP under the direct supervision of the Executive Assistant United States Attorney for Operations (or the U.S. Attorney's designee) with general oversight by the U. S. Attorney for the District of Columbia. The policies and procedures for disbursement of EWAP funds are outlined in the following paragraphs.

    B.    Approval of EWAP expenditures shall be made in accordance with the provisions of section IV of this memorandum.

**Attachment 5**

II.     Determination of Appropriate Options

(3)     Department of Housing and Urban Development (HUD) Witness Relocation
        Assistance Program - This program is operated by the HUD's Office of
        Inspector General. The VWAU staff assists witnesses in applying for HUD
        relocation. The witness must have been living in HUD- subsidized housing

or public housing at the time he or she witnessed the crime or the crime must have occurred in or around HUD-subsidized or public housing property. This program requires that the witness be able to support him or herself and family. It does not provide protective services, but only makes it possible for eligible witnesses (and family members) to relocate to a different public housing complex out of the danger area, or to be issued a Section 8 Voucher to pay for subsidized housing in another area. The program does not provide assistance with expenses related to the actual move to new housing. The HUD Witness Relocation Assistance Program requires that witnesses meet specific criteria and follow established regulations.

(4)     The EWAP is designed to provide self-help assistance to witnesses and/or family members of witnesses who either do not meet the criteria for the three programs mentioned above, or who may need some interim assistance currently not available from the MPD or other law enforcement agencies while awaiting entry into any of the above programs. EWAP funds should not be used where funds are available from other agencies. The EWAP provides assistance on an emergency, short-term basis to victims, witnesses and/or their family members who have concerns about their safety as a result of participation in a case or investigation and who do not have other options for such assistance.

B.     It is critical that the level of risk to witnesses be carefully evaluated. The following steps should be followed in assessing risk and presenting assistance options to victims and witnesses:

(1)     Determination of the risk to the witness should be made by the law enforcement investigator assigned to the case in consultation with the AUSA handling the matter and the Supervisory Witness Security Specialist (SWSS) or the VWAU Chief.

(2)     The SWSS will assign the case to a Witness Security Specialist (WSS) who will review available options with the witness and explain what each option entails, including its requirements and restrictions, and its application and approval process. The WSS should assess the eligibility of the witness for each program as well as the suitability of each program to meet the needs of the witness, and may recommend an appropriate option. If the witness refuses the recommended option, other options should then be explored, including any actions that the witness may take on his or her own. EWAP

3

funds are extremely limited, and should be used only when other alternatives are either unavailable or inappropriate. If a witness is able to leave town on his/her own, EWAP funds are better used for someone who cannot afford to do so.

(3)     If a witness has been offered and declined either the EWAP or the two options that provide protective services (i.e., the WSP and the DCSTRP), he or she must sign a written declination form (Attachment A) indicating that he or she understands the options given, the potential risk, and still declines to utilize these services.

4

IV.   Procedures for accessing EWAP funds

    A.

All requests must be accompanied by an acknowledgment form (Attachment B) signed by the witness and appropriate USAO personnel.

6

## EMERGENCY WITNESS ASSISTANCE PROGRAM

### ACKNOWLEDGMENT FORM

I, _WILLIE BEST_, understand that as a result of my cooperation and/or pending testimony for the United States Attorney's Office for the **District of Columbia,** that I may qualify for assistance under the Emergency Witness Assistance Program.

All of the terms and conditions of the Emergency Witness Assistance Program have been explained to me by **LaVerne Forrest** of the United States Atorney's Office, and I fully understand these terms and conditions and what services may be available to me and my family.

I understand that any assistance given to me through the Emergency Witness Assistance Program does not constitute protection for me, my family, or anyone else.

I understand that I retain the responsibility to meet any release conditions imposed on me by a court and that I must continue to meet any other court obligations.

I understand that I must continue to abide by any child custody, child visitation, and child support obligations imposed on me by any court.

I will be responsible to pay for any damage to property that I, or my family cause when I am staying in a place for which the United States Attorney's Office is providing funds.

Date: _9-16-04_

_____
Signature

Date: _9|16|04_

Witnessed by: _LaVerne Forrest_
Assistant United States Attorney or
Witness Security Specialist

**Attachment 6**

## EMERGENCY WITNESS ASSISTANCE PROGRAM

## ACKNOWLEDGMENT FORM

I, _Deloris Best_, understand that as a result of my cooperation and/or pending testimony for the United States Attorney's Office for the **District of Columbia,** that I may qualify for assistance under the Emergency Witness Assistance Program.

All of the terms and conditions of the Emergency Witness Assistance Program have been explained to me by **LaVerne Forrest** of the United States Attorney's Office, and I fully understand these terms and conditions and what services may be available to me and my family.

I understand that any assistance given to me through the Emergency Witness Assistance Program does not constitute protection for me, my family, or anyone else.

I understand that I retain the responsibility to meet any release conditions imposed on me by a court and that I must continue to meet any other court obligations.

I understand that I must continue to abide by any child custody, child visitation, and child support obligations imposed on me by any court.

I will be responsible to pay for any damage to property that I, or my family cause when I am staying in a place for which the United States Attorney's Office is providing funds.

Date: _9/16/04_                          _Deloris Best_
                                         Signature

Date: _9/16/04_                          Witnessed by: _LaVerne Forrest_
                                         Assistant United States Attorney or
                                         Witness Security Specialist

## EMERGENCY WITNESS ASSISTANCE PROGRAM

### ACKNOWLEDGMENT FORM

I, _Ronnie Doy_ understand that as a result of my cooperation and/or pending testimony for the United States Attorney's Office for the **District of Columbia,** that I may qualify for assistance under the Emergency Witness Assistance Program.

All of the terms and conditions of the Emergency Witness Assistance Program have been explained to me by **LaVerne Forrest** of the United States Atorney's Office, and I fully understand these terms and conditions and what services may be available to me and my family.

I understand that any assistance given to me through the Emergency Witness Assistance Program does not constitute protection for me, my family, or anyone else.

I understand that I retain the responsibility to meet any release conditions imposed on me by a court and that I must continue to meet any other court obligations.

I understand that I must continue to abide by any child custody, child visitation, and child support obligations imposed on me by any court.

I will be responsible to pay for any damage to property that I, or my family cause when I am staying in a place for which the United States Attorney's Office is providing funds.

Date: _9-16-04_

_Ronald Doy_
Signature

Date: _9/16/04_

Witnessed by _LaVerne Forrest_
Assistant United States Attorney or
Witness Security Specialist

## EMERGENCY WITNESS ASSISTANCE PROGRAM

## ACKNOWLEDGMENT FORM

I, _Anthony Wright_, understand that as a result of my cooperation and/or pending testimony for the United States Attorney's Office for the **District of Columbia,** that I may qualify for assistance under the Emergency Witness Assistance Program.

All of the terms and conditions of the Emergency Witness Assistance Program have been explained to me by **LaVerne Forrest** of the United States Attorney's Office, and I fully understand these terms and conditions and what services may be available to me and my family.

I understand that any assistance given to me through the Emergency Witness Assistance Program does not constitute protection for me, my family, or anyone else.

I understand that I retain the responsibility to meet any release conditions imposed on me by a court and that I must continue to meet any other court obligations.

I understand that I must continue to abide by any child custody, child visitation, and child support obligations imposed on me by any court.

I will be responsible to pay for any damage to property that I, or my family cause when I am staying in a place for which the United States Attorney's Office is providing funds.


Date: _9/16/04_

_____
Signature

Date: _9/16/04_

Witnessed by _LaVerne Forrest_
Assistant United States Attorney or
Witness Security Specialist

**ACCEPTANCE/REFUSAL FORM**
(Fax and Interoffice Mail)

DATE:    11-03-04

TO:    CLIENT SERVICES

FROM:    Barry Farms.

SUBJECT:    Disposition of Offer

Client Name: Deloris Best
Client #: ▮▮▮▮▮▮▮▮▮▮▮▮
Unit Address: 1248 8th St Road, SE #101
Unit #: 058-3020

(X) Applicant accepted offer of unit on 11-3-04

_Deloris Best_                            11/03/04
(APPLICANT'S SIGNATURE AND DATE)          (DATE)

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

( ) NO CONTACT BY APPLICANT WITHIN TIME SPECIFIED IN ASSIGNMENT LETTER

( ) APPLICANT FAILED TO ACCEPT/KEEP APPOINTMENT TO INSPECT UNIT

( ) APPLICANT REJECTED UNIT OF HOUSING FOR THE FOLLOWING REASON(S):

_____

_____

_____

(MANAGER'S SIGNATURE AND DATE)

*REJECTION OF THE UNIT BY THE APPLICANT REQUIRES THE APPLICANT FILE TO BE RETURNED TO CLIENT SERVICES WITHIN 24 HOURS.

**Attachment 7**

# District of Columbia Housing Authority

**Dwelling Lease Agreement**

### Housing Management Administration
### Lease Agreement for Public Housing Dwelling Units

PROPERTY NAME AND NO. **Wade Apts 58**

LEASE NO. **058-3020**

TENANT: **Deloris Best**

PREMISES: **1249 Eaten Rd. SE #101**

NO. OF BEDROOMS: **Two (2)**

HOUSEHOLD MEMBERS:

| | RELATIONSHIP: |
|---|---|
| 1. Deloris Best | 1. Head of Household |
| 2. Bonald Day | 2. Spouse |
| 3. | 3. |
| 4. | 4. |
| 5. | 5. |
| 6. | 6. |
| 7. | 7. |
| 8. | 8. |
| 9. | 9. |
| 10. | 10. |

**THE PREMISES SHALL BE OCCUPIED SOLELY BY THE TENANT AND MEMBERS OF THE HOUSEHOLD LISTED ABOVE.**

**THIS LEASE** is made this **3rd** day of **November 2014** by and between The District of Columbia, Housing Authority (DCHA), Housing Management Administration (hereinafter called the "Administration") and **Deloris Best**
(hereinafter jointly and severally called the "Tenant")

**1. The Administration,** relying upon the Tenant's evidence of eligibility and representation as to family income and composition, does hereby lease to the Tenant, upon the conditions hereinafter provided, the above-described premises for the rent of $ **165.00** per month. Accordingly, the first term of this lease shall commence on the **3rd** day and continue through the last day of **November 2014** for the sum of $ **165.00** payable in advance. This lease shall be automatically renewed for successive terms of one month with each term commencing to run on the 1st day of each month at the rate of $ **165.00** per month, payable in advance without demand at the place designated by the Administration. The monthly rent stated above will remain in effect unless adjusted in accordance with paragraphs 6 or 8 of this lease to comply with the applicable rent schedule, definition of income and income limits contained in the Statement of Policies and posted in the property office.

Rental payments are due on the **First** day of each month. If such payments are not received by the Administration by the **Tenth day** of the month when due, the Tenant shall be charged at a Late Fee. The amount of the Late Fee will be contained in the Statement of Policies and posted in the property office.

**2. The Tenant shall be charged a returned check fee** in addition to the amount due, for any check submitted by the tenant that is returned by the payor financial institution. The Returned Check Fee, and the amount originally due, must be paid by money order or cashier's check within **Five** working days after the tenant receives the returned check notice. The tenant will be required to make **all** payments by money order or cashier's check if two returned checks are received within one year. The amount of the Returned Check fee will be contained in the statement of Policies and posted in the property office.

**3. Security Deposit.** The Tenant will be required to make a security deposit of $ **100.00** to cover the cost of repairs needed because of damage done to the premises by the Tenant or the Tenant's household, guest or agent, reasonable wear and tear excepted. The Tenant will pay when billed, the full amount of the cost of repairs occasioned by such damages in order that the deposit will remain intact. Upon termination of this lease, the security deposit is to be refunded to the Tenant or to be applied to any such damage or any rent delinquency or unpaid service charge.

**4. Utilities and Charges for Excess of Utilities.**
(a) Except for individually metered premises, the Administration shall provide water, gas and/or electricity for the provision of heat, hot and cold running water, lighting and the operation of ranges, refrigerators and general household appliance. The Administration shall also provide a range and refrigerator.

Continued on page 2

WHITE COPY ......... FILE
CANARY COPY ...... RESIDENT
PINK COPY .............

**Attachment 8**

**15. Procedures for Termination of Lease.**

(a) The Administration shall give a 30-day Notice to Quit in writing prior to the commencement of any court action for eviction. The Tenant shall give a 30-day Notice of Intent to Quit in writing to the property office.

(b) The Notice to Quit to the Tenant shall be served on the Tenant as prescribed by the Code of the District of Columbia; and the Tenant's Notice to Quit to the Administration shall be delivered to the property office or the Administration's Central Off Ice or sent by prepaid first-class mail properly addressed.

(c) The Notice to Quit to the Tenant shall state reasons for the termination, shall inform the Tenant or his/her right to make such reply as he/she may wish and his/her right to request a hearing in accordance with the Administration's grievance procedure.

**16. Grievance Rights.**

Disputes concerning the obligations of the Tenant or the Administration shall be resolved in accordance with the grievance procedure that is in effect at the time such grievance arises.

**17. Providing Notice.**

Except as provided in paragraph 9, where one party to this lease is required to give notice to the other, and the method of notice is not specifically prescribed elsewhere in this lease or by D.C. law, the Administration shall give notice by a first-class, postage prepaid letter addressed to the Tenant at the premises covered by this lease, or delivered to a person of suitable age at the address covered by this lease. The Tenant shall give notice by hand delivery or first-class, postage prepaid letter to the property office.

**18. Changes to the Lease.**

No changes to this lease shall be made except in writing and signed by the Tenant and an authorized representative of the Administration, except that changes authorized by paragraphs 6 and 8 (rent redetermination) of this lease and changes in the Administration's policies, rules and regulations shall be exempt from the provisions of this paragraph. Failure of the Tenant to comply with any covenant of the lease shall not create a waiver by the Administration of the covenant or the breach.

**District of Columbia
Housing Authority**
By
Housing Management
Administration

_Dekoris Best_ _____ 11/03/04
TENANT                          DATE

_Ronald E Doy_ _____ 11-03-04
TENANT                          DATE

_____ 11.3.04
HOUSING MANAGER            DATE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

DOLORES BEST, Executrix of the Estate          )
   of Willie Best, Deceased                            )
                                    )
        Plaintiff,                                          )
                                      )
       v.                                                    )     Civil Action No.  07-007 (PLF)
                                      )
UNITED STATES OF AMERICA,                       )
                                      )
        Defendant.                                         )
_____)

## <u>ORDER</u>

      Upon consideration of Defendant's Motion to Dismiss or, in the Alternative for Summary

Judgment, the Plaintiff Opposition thereto, it is this _____ day of _____, 2007

      ORDERED that the motion is GRANTED, and it is further

      ORDERED that this matter is dismissed with prejudice.

                                     _____

                                     PAUL F. FRIEDMAN
                                     UNITED STATES DISTRICT JUDGE