UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DOLORES BEST, Executrix of the Estate of )
    Willie Best,                        )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )        Civil Action No. 07-007 (PLF)
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Defendant.                  )
_____ )


OPINION

        This matter is before the Court on the government's motion to dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for

failure to state a claim upon which relief can be granted under Rule 12(b)(6).  In the alternative,

the government requests that the Court enter summary judgment in its favor under Rule 56.[1]

        The plaintiff, Elizabeth Deloris Best, brings suit under the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. §§ 2671, et seq., on behalf of the estate of her deceased son, Willie

Best, as a result of his murder at the Barry Farms housing project in Southeast, Washington, D.C.

on January 8, 2005.[2]  The plaintiff's complaint for negligence alleges personal injuries and death

_____

        [1]        The briefs submitted in connection with this motion are:  Defendant's Motion to
Dismiss or, in the Alternative, for Summary Judgment ("Mot."); Plaintiff's Opposition to
Defendant's Motion to Dismiss and for Summary Judgment ("Opp."); and Defendant's Reply to
Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary
Judgment ("Reply").

        [2]        There is a discrepancy regarding the spelling of the plaintiff's first name in the
submitted documents.  For ease of reference, the Court will use the spelling that the plaintiff used
when she signed her affidavit, which is "Deloris." Deloris Best Affidavit ("D.Best Aff.") at 4.

caused by state-created danger.  She requests judgment against the United States in the amount of

ten million dollars.  Upon consideration of the government's motion, the plaintiff's opposition,

and the reply, the Court must grant the government's motion and will dismiss the case for lack of

jurisdiction.

## I.  MOTION TO DISMISS

The government moves to dismiss pursuant to 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure and, in the alternative, for summary judgment.  See Mot. at 1.

The government argues that the plaintiff's claim must be dismissed for lack of subject matter

jurisdiction because the discretionary function exception to the FTCA bars such complaints.  See

id.  In addition, the government asserts, the "private analogue" requirement of the FTCA forms a

second bar to the plaintiff's claim and requires the Court to dismiss the case for plaintiff's failure

to state a claim.  See id.  Because the Court concludes that the discretionary function exception to

the FTCA bars plaintiff's claim, it will dismiss the case for lack of subject matter jurisdiction

under Rule 12(b)(1) and need not reach defendant's other arguments.

Federal courts are courts of limited jurisdiction.  They therefore may only hear

cases entrusted to them by a grant of power contained in either the Constitution or in an act of

Congress.  See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945

(D.C.Cir.2005); Hunter v. District of Columbia, 384 F.Supp.2d 257, 259 (D.D.C.2005); Srour v.

Barnes, 670 F.Supp. 18, 20 (D.D.C.1987) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511,

(1973)).  The United States may be sued for money damages only when it has expressly waived

its immunity from suit.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v.

Frank, 486 U.S. 549, 554 (1988)).  The question here is whether the FTCA provides a waiver of

sovereign immunity by the United States, such that the Court has jurisdiction over the United

States in this case.

        Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter

jurisdiction.  See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F.Supp.2d 68, 72

(D.D.C. 2004) (citing Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 13

(D.D.C. 2001); Pitney Bowes, Inc. v. United States Postal Serv., 27 F.Supp.2d 15, 18

(D.D.C. 1998)).  In determining whether to grant a motion to dismiss for lack of subject matter

jurisdiction, the Court may either consider the complaint alone, or "the complaint supplemented

by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts

plus the court's resolution of disputed facts."  Herbert v. Nat'l Acad. of Science, 974 F.2d

192, 197 (D.C. Cir. 1992).  The Court must accept all of the factual allegations in the complaint

as true, but may, in appropriate cases, consider certain materials outside the pleadings.  See

Jerome Stevens Pharms., Inc. v. FDA, 402, F.3d 1249, 1253-54 (D.C.Cir. 2005).  While the

complaint is to be construed liberally, the Court need not accept factual inferences drawn by

plaintiff if those inferences are not supported by facts alleged in the complaint.  Nor must the

Court accept plaintiff's legal conclusions.  See Primax Recoveries, Inc. v. Lee, 260 F.Supp.2d

43, 47 (D.D.C. 2003).

## II.  FACTUAL BACKGROUND

        On or about September 14, 2004, Willie Best and his mother, Elizabeth Deloris

Best, were victims of and witnesses to an armed robbery committed by two men in the Lincoln

Heights area of Northeast, Washington, D.C.  See Complaint ("Compl.") ¶¶ 39-40.[3]  Both Willie

and Deloris Best participated in the prosecution of the two men accused of the robbery as victims

and witnesses.  See id. ¶ 42.  Because of their participation in the prosecution and because they

felt the need for additional protection, the United States Attorneys' Office ("USAO") offered

both Willie and Deloris Best the opportunity to participate in programs which assist witnesses at

risk because they have been victims of a violent crime and because of their cooperation with the

government.  See id. ¶¶ 42-44.[4]  The USAO Victim Witness Assistance Unit ("VWAU")

conducted a risk assessment of the Best family's situation to determine the level of risk they

---

[3]      There is a discrepancy in the documents submitted regarding the exact date that
the armed robbery occurred.  In the complaint, the plaintiff states that the robbery was committed
"on or about" September 14, 2004, but in the affidavit of Ronald Doy (Deloris Best's boyfriend
who was also a witness to the robbery), the affidavit of Deloris Best, and the police report, the
date is listed as September 12, 2004.

[4]      The Department of Justice and the United States Attorney's Office, through its
Victim Witness Assistance Unit ("VWAU"), operate several different programs to assist and or
protect witnesses and victims of violent crimes. The Emergency Witness Assistance Program
("EWAP") is outlined in the EWAP Program Manual and in the Policies and Procedures for Use
of Emergency Witness Assistance Program Funds.  See Attachment 4 to Mot., Emergency
Witness Assistance Program Manual ("Manual"); and Attachment 5 to Mot., Policies and
Procedures for Use of EWAP Funds ("Policies").  "EWAP provides assistance on an emergency,
short-term basis to victims, witnesses and/or their family members who have concerns about
their safety as a result of participation in a case or investigation and who do not have other
options for such assistance."  Policies at 3.

        The Department of Housing and Urban Development ("HUD") Office of
Inspector General operates the Witness Relocation Assistance Program, also at issue in this case.
USAO/VWAU staff can assist witnesses in applying for this program, but it is not under the
direction of the USAO or the VWAU.  See Declaration of Heather Cartwright ("Cartwright
Decl.") ¶ 11; see also Policies at 2-3.  This program is available to some witnesses who "have
been living in HUD-subsidized housing or public housing at the time he or she witnessed the
crime. . . Th[e] program does not provide protective services, but only makes it possible for
eligible witnesses (and family members) to relocate to a different public housing complex out of
the danger area."  Policies at 2-3.

faced because of their cooperation.  See id. ¶¶ 45-46.  Based on that risk assessment and an

interview between the Best family and the VWAU Witness Security Specialist ("WSS"),

LaVerne Forrest, the VWAU agreed to accept Willie and Deloris Best into the Emergency

Witness Assistance Program.  See id. ¶¶ 24, 48.  See also Attachment 6 to Mot., Emergency

Witness Assistance Program Acknowledgment Form ("Acknowledgment Form") at 1.

       In September and October of 2004, the USAO/VWAU moved the Best family

first to a hotel in Northern Virginia and later to a hotel in Silver Spring, Maryland, all the time

providing money for the Bests to pay for the cost of the hotels, food and transportation.  See

Compl. ¶¶ 48-50.  On November 2, 2004, Ms. Forrest informed the Best family that they would

be able to move to the Barry Farms housing project in Southeast, Washington, D.C..  See D.Best

Aff. ¶ 22.  Ms. Best initially declined the offer, but then, on November 3, accepted the Barry

Farms apartment.  See id. ¶¶ 23- 40.  In December 2004, the USAO/VWU moved the Bests to

the Barry Farms Housing Project in Southeast, Washington, D.C., again paying for the move,

food and lodging.  See Compl. ¶ 51.  One month later, on January 8, 2005, Willie Best was

murdered by gunshot while he and his family were living in the Barry Farms housing project.

See id. ¶ 53.

## III.  THE FTCA AND ITS DISCRETIONARY FUNCTION EXCEPTION

       The Federal Tort Claims Act is a limited waiver of the United States' sovereign

immunity from suit that gives federal district courts jurisdiction over civil damages actions

against the United States "for injury or loss of property, or personal injury or death caused by the

negligent or wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment[.]" 28 U.S.C. § 1346(b).  See F.D.I.C. v. Meyer, 510 U.S.

at 475 (FTCA waived sovereign immunity of the United States for "certain torts" committed by

federal employees).  Such a waiver of sovereign immunity must be "strictly construed, in terms

of its scope, in favor of the sovereign." Tri-State Hosp. Supply Corp. v. United States, 341 F.3d

571, 575 (D.C.Cir.2003) (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  A

party bringing suit against the United States bears the burden of proving that the government has

unequivocally waived its immunity for the type of claim involved. See Tri-State Hosp. Supply

Corp. v. United States, 341 F.3d at 575.  The burden is on a party asserting jurisdiction under the

FTCA to demonstrate that the claim asserted is the kind permitted by statute and that the conduct

giving rise to the action occurred within the scope of the government employee's employment.

See 28 U.S.C. §§ 1346(b), 2680.

       This limited waiver of immunity under the FTCA is subject to several exceptions,

however, including the  "discretionary function exception."  28 U.S.C. § 2680(a).  The statute

provides that the jurisdiction given to district courts under 28 U.S.C. § 1346(b)(1) does not apply

in cases where a claim is:

>        based upon an act or omission of an employee of the Government,
>        exercising due care, in the execution of a statute or regulation,
>        whether or not such statute or regulation be valid, or based upon
>        the exercise or performance or the failure to exercise or perform a
>        discretionary function or duty on the part of a federal agency or an
>        employee of the Government, whether or not the discretion
>        involved be abused.

28 U.S.C. § 2680(a).  When an act by a government employee falls within the discretionary

function exception, the United States has not waived its sovereign immunity.

       The rationale behind the discretionary function exception, as the Supreme Court

6

explained in <u>United States v. Gaubert</u>, is that "when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>United States v. Gaubert</u>, 499 U.S. at 324. In such cases, there is no waiver of sovereign immunity and the government is protected from suit. By contrast, if there is no discretionary function involved, the United States has waived its sovereign immunity and the federal district courts have subject matter jurisdiction over the claim.

Here, the government and plaintiff disagree as to whether the USAO's actions in assisting the Bests fall within or outside of the discretionary function exception to the FTCA and, therefore, whether this Court has subject matter jurisdiction.

## IV.  ANALYSIS

The government makes two arguments in support of its assertion that this Court lacks subject matter jurisdiction. First, the government argues the act in question falls within the discretionary function exception of the FTCA established by 28 U.S.C. § 2680(a). <u>See</u> Mot. at 14. Second, the government asserts that there was no special relationship between Mr. Best and the USAO that would "overcome th[is] discretionary function exception or create a duty to protect Mr. Best." <u>Id</u>. at 15. If there were such a duty, the act would no longer be discretionary and the government would have waived its sovereign immunity.

### A. Discretionary Function Exception

#### 1. The Gaubert test

In United States v. Gaubert, the Supreme Court elaborated on the two-part test it first established in Berkovitz v. United States, 486 U.S. 531 (1988), to determine whether a government action falls under the FTCA discretionary function exception. See United States v. Gaubert, 499 U.S. at 322-23. First, a court must look to the nature of the act and whether it involves an "element of judgment or choice." Id. at 322 (citing Berkovitz v. United States, 486 U.S. at 536). The Court explained that when a "federal statute, regulation, or policy specifically prescribes a course of action," there is no judgment or choice involved, and the discretionary function exception therefore does not apply because "the employee has no rightful option but to adhere to the directive." Id. (quoting Berkovitz v. United States, 486 U.S. at 536). "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." Berkovitz v. United States, 486 U.S. at 536.

Assuming the conduct at issue involves an element of judgment, the Court then must consider the second part of the test: whether that judgment is the kind of judgment that the discretionary function was designed to shield. The Supreme Court explained:

> Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," when properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy."

United States v. Gaubert, 499 U.S. at 323 (citing Berkovitz v. United States, 486 U.S. at 323).

See also United States v. S.A. Empresa de Viacoa Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984)).  In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment."  Berkovitz v. United States, 486 U.S. at 537.  But if the government action is not grounded in public policy concerns, "it is not immunized by the discretionary function exception."  Shuler v. United States, 448 F.Supp.2d 13, 18 (D.D.C. 2006).

## 2.  Discretion

The plaintiff alleges that after LaVerne Forrest interviewed the Bests, she helped arrange temporary placement for them in hotels in Virginia and Maryland and eventually offered them a place to live in the Barry Farms housing project.  See D.Best Aff. ¶¶ 15, 20 and 22. Plaintiff does not mention in her affidavit the specific programs through which she and her family were moved and eventually relocated.  It is clear from the declaration of Heather Cartwright, an Assistant United States Attorney and Chief of the VWAU, however, that the family was enrolled in EWAP and moved to Virginia and Maryland under that program while they awaited relocation through the HUD Witness Relocation Assistance Program.  See Cartwright Decl. ¶ 14.  Ms. Best initially refused to accept the housing offered at Barry Farms, but eventually accepted the placement after Ms. Forrest persuaded her to accept the unit.  See D.Best Aff.  ¶¶ 37-39.

Ms. Best asserts that if Ms. Forrest had followed the procedures set forth in the EWAP plan, she would not have "used her influence over Ms. Best . . . to persuade [her] to accept the HUD placement at Barry Farms," and would instead have accepted Ms. Best's refusal.

Opp. at 8.  The government argues that the plaintiff can point to no statutes or regulations that impose a mandatory duty to provide a certain type of protection to the Bests, and so Ms. Forrest's actions in placing the Bests in EWAP and then in an apartment in Barry Farms necessarily must be discretionary.  See Mot. at 14.  The government also asserts that the actions taken to assist the plaintiff and the type of protection or assistance provided were discretionary decisions.  In her declaration attempting to describe the discretion involved, Ms. Cartwright stated that "each case is different and the USAO works with each witness to find options that will hopefully improve the witness' feeling of safety."  Cartwright Decl. ¶ 20.  There is even a specific and explicit guideline allowing Department of Justice personnel to use their judgment in determining the witnesses' risks:  "Department personnel should use their discretion and sound judgment when assessing and discussing possible threats and security measures with victims."  Attachment 2 to Mot., Attorney General Guidelines for Victim and Witness Assistance May 2005 ("AG Guidelines 2005") at 5.

The government asserts that the "entire process [of assessing appropriate witness programs for an individual] involves repeated steps in which the USAO exercises its discretion," balancing concerns about the threats to the witnesses, available government resources and the various witness security programs that might be an option for each case.  See Mot. at 14-15 (citing Cartwright Decl. ¶ 20).  The government maintains that Ms. Forrest used her discretion, as required by the AG Guidelines, when she determined how best to provide assistance to the Bests, regardless of whether or not Ms. Best was offered an official declination form.  See Reply at 2-4. The government argues that her actions therefore fall within the discretionary function exception to the FTCA.  In the circumstances of this case and under the relevant case law, the Court must

10

agree with the government.

        In <u>Berkovitz v. United States</u>, the Supreme Court explained that a "discretionary" action is one that is "a matter of choice for the acting employee" and must "involve an element of judgment or choice." <u>Berkovitz v. United States</u>, 486 U.S. at 536. The Court further explained that the exception could not apply when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." <u>Id</u>. In this particular case, the AG Guidelines expressly state that "Department personnel should use their discretion and sound judgment when assessing and discussing possible threats and security measures with victims." AG Guidelines 2005 at 5. Specifically, the EWAP Manual states in its introduction that the program is "intended to be a program for use within the United States Attorney's Office at the discretion of the approving official." Manual at 2. The Court cannot conceive how Ms. Forrest's actions in encouraging Ms. Best to accept the Barry Farms housing could not be part of the discretion allowed by the AG Guidelines or any other cited regulation.

        In a case quite similar to this one, Judge Urbina found that the decision to protect a government informant fell squarely within the discretionary function exception to the FTCA. In <u>Shuler v. United States</u>, 448 F.Supp.2d at 15, the plaintiff was permanently paralyzed after being shot in the back. He alleged that Kevin Gray, a well-known convicted murderer, allegedly ordered plaintiff's murder after learning that plaintiff was working as an informant with the Federal Bureau of Investigation. <u>See id</u>. The plaintiff sued the United States under the FTCA, asserting that the government failed to provide him with adequate protection even though it had an affirmative duty to do so. <u>See id</u>. at 19. Judge Urbina rejected this argument and concluded that the government was correct that "a law enforcement official's decision as to how to protect a

victim and how to react against a threatening individual are well within the discretionary function exception and claims based on those theories are barred." Id. at 20.

　　　　When Ms. Forrest determined that the EWAP program would be the most appropriate fit for the Best family, she exercised the same kind of discretion Judge Urbina recognized in Shuler: the discretion she had been granted to provide short-term assistance to witnesses "who have concerns about their safety as a result of participation in a case or investigation and who do not have other options for such assistance." Policies at 3. The EWAP procedures and policies at issue here do no more than guide the USAO employees in assessing risk, using their judgment, and determining which witness assistance program might be best suited to a particular witness. Specifically, the memorandum regarding the EWAP Procedures for the USAO in the District of Columbia states that the Witness Security Specialist working within the VWAU should "assess the eligibility of the witness for each program as well as the suitability of each program to meet the needs of the witness, and may recommend an appropriate option." Id. The policy does not dictate precisely what programs should be made available to each individual but leaves that judgment up to the USAO employee in each situation. In this case, Ms. Forrest interviewed the Bests and determined that the Department of Housing and Urban Development ("HUD") Witness Relocation Assistance Program and EWAP were the most appropriate services to assist the Best family. Ms. Forrest's conduct in deciding how best to assist the Best family was "appropriately. . . the product of judgment or choice." Berkovitz v. United States, 486 U.S. at 536. The government's actions in this case were "discretionary."

　　　　Under the second part of the Berkovitz and Gaubert test, even if "the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the

12

kind that the discretionary function exception was designed to shield" in order to decide if the

government in a particular case qualifies for the protection of the exception.  Berkovitz v. United

States, 486 U.S. at 536.  As the D.C. Circuit emphasized in an FTCA case related to the security

of a United States embassy in Kenya:

> [W]hat matters in this second inquiry is not what the
> decisionmaker was thinking, but whether the type of decision being
> challenged is grounded in social, economic, or political policy.
> Evidence of the actual decision may be helpful in understanding
> whether the 'nature' of the decision implicated policy judgments,
> but the applicability of the exemption does not turn on whether the
> challenged decision involved such judgments.

Macharia v. United States, 334 F.3d 61, 67 (D.C. Cir. 2003) (citing Cope v. Scott, 45 F.3d

445, 449 (D.C. Cir. 1995)).

The plaintiff argues that "no social, economic, or political policy is implicated in

the decision of Ms. Forrest to pressure Ms. Best into accepting the unit at Barry Farms."  Opp.

at 9.  The Court cannot agree.  Ms. Forrest's decision was based on "balancing the degree of

threat the witness[es] faced, the availability of government resources, the witness[es]' own

resources, and the requirements and restrictions of the various witness security options."

Cartwright Decl. ¶ 20.  All of these considerations can be included in the broad terms "social,

economic and political policy."  Ms. Cartwright reviewed the Bests' case and determined that

Ms. Forrest had "evaluated the Best family's eligibility for the range of witness security programs

and specifically focused on the HUD relocation programs including either a public housing

transfer or a section 8 voucher application."  Id. ¶ 13.

As the District of Columbia Circuit has stated, the Court does not look to the

specific thoughts or thought processes of the particular decisionmaker, but to the "*type of*

decision being challenged." Macharia v. United States, 334 F.3d at 67 (citing Cope v. Scott, 45 F.3d at 449). Here the *type* of decision was the sort that the discretionary function exception was designed to shield. Ms. Forrest assessed the options available to the Best family, searched for an opportunity to help them relocate and, while the family was waiting for HUD to offer relocation assistance, provided the Bests with temporary lodging at hotels in the D.C. area. When an apartment became available, Ms. Forrest persuaded Ms. Best to accept it.

The plaintiff asserts that persuading the Bests to accept the unit was an *unauthorized* use of Ms. Forrest's discretion, and that her "discretion" therefore was not the type of discretion the exception was designed to protect. See Opp. at 8-9. This assertion is not supported by the record. Ms. Forrest met with the Best family after law enforcement and the AUSA assessed the family's security risk, and she determined that the EWAP assistance would be the most appropriate program for the family. Each step in this process – from the initial determination by the law enforcement investigator and the AUSA of the potential risk to the witness, to the recommendation of an appropriate action for the witness to take – involved the judgment of several people, "balancing the degree of threat the witness face[d], the availability of government resources, the witness's own resources, and the requirements and restrictions of the various witness security options." Cartwright Decl. ¶ 20. This process allows employees at each stage to exercise their judgment in order to assess the individual situation of each victim/witness and to develop a way to assist the person during and after his or her cooperation with the prosecution. That goal is surely within the public policy that the witness assistance regulations were designed to promote. See Ochran v. United States, 117 F.3d 495, 500 (11th Cir. 1997); Shuler v. United States, 448 F.Supp.2d at 21. The decision of how to protect a threatened victim

14

is a discretionary decision that is susceptible to a policy analysis.

### B.  Special Relationship

Plaintiff also argues that even if the government actions literally involved judgment or choice, there existed a "special relationship" between the plaintiff and the government, which made the protection of the plaintiff mandatory and not within the discretion of individual government employees.  See Opp. at 9.  This "special relationship," plaintiff argues, would prevent the government from being shielded by the discretionary function exception.  The plaintiff cites the Eleventh Circuit's decision in Ochran for the proposition that "where a government enters into a special relationship with an individual, the government may not have any discretion as to whether to protect that individual."  Ochran v. United States, 117 F.3d at 505 (citing Merced v. City of New York, 856 F.Supp. 826, 831 (S.D.N.Y. 1994)).  Plaintiff misreads Ochran.

In Ochran, Michelle Ochran, a witness whose ex-boyfriend was involved in drug trafficking activity, provided information that led to the ex-boyfriend's arrest.  While awaiting prosecution, the ex-boyfriend threatened to kill Ms. Ochran and her family because of her cooperation with the government.  After learning of the threat, the Assistant United States Attorney told Ochran's father, "I'll take care of it . . . don't worry about it."  Ochran v. United States, 117 F.3d at 498.  The AUSA confronted the defendant and warned him not to make any more threats towards Ochran, but did not attempt to have his bond revoked.  The next month, while out on bond, the ex-boyfriend kidnaped Ochran at knife point, drove her to a remote area, and choked and stabbed her.  See id. at 499.  She survived and brought suit under the FTCA,

alleging that the AUSA negligently failed to protect her from her ex-boyfriend.  See id.

Ms. Ochran made the same argument that plaintiff makes here:  that the discretionary function exception cannot maintain the United States' sovereign immunity  because there was a "special relationship" between the AUSA and Ochran.  See Ochran v. United States, 117 F.3d at 499.  The court in Ochran rejected this argument and found that although there may have been a special relationship between the AUSA and Ochran, that relationship "did not involve a promise to perform specific actions on Ochran's behalf."  Id. at 506 n.7.  As Judge Urbina noted in Shuler, "a generalized promise to provide protection to government witnesses is insufficient to constitute a waiver under the FTCA because it does not contain a specific promise involving no policy judgments."  Shuler v. United States, 448 F.Supp.2d at 21 (citing Ochran v. United States, 117 F.3d at 506 n.7).

In this case, there was no specific promise to protect the Best family as would be required to invoke the mandatory duty to protect under the special relationship exception.  In fact, the family was not enrolled in a witness *protection* program, but the Emergency Witness *Assistance* Program and the HUD Witness Relocation *Assistance* Program.  By enrolling in the Emergency Witness Assistance Program, Mr. Best signed an Acknowledgment Form, stating that he understood that the EWAP assistance did not "constitute protection" for himself or his family.  See Acknowledgment Form at 1.  Without such a promise of protection, "the defendant's protective services constitute a discretionary function under the FTCA."  Shuler v. United States, 448 F.Supp.2d 21.  Although Ms. Forrest and the USAO undoubtedly had a relationship with the Best family when the family was advised of its victim assistance options at a very difficult time period, there was not a "special relationship" in the sense that would support a mandatory

duty to protect the Bests.  See Ochran v. United States, 117 F.3d at  506 n.7.  The plaintiff's

special relationship argument thus brings her no closer to successfully establishing subject matter

jurisdiction than does her discretionary function argument.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that it lacks subject matter

jurisdiction over Plaintiff's claims as a result of the discretionary function exception to the

Federal Tort Claims Act.  An Order consistent with this Opinion will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
DATE:  December 3, 2007          United States District Judge

17